IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| JAMES D. ROBERTSON, #5067 ) | |
| ) | |
| Petitioner ) | |
| ) | **2:11-cv-00063-TMC-MGB** |
| v. ) | |
| ) | CAPITAL CASE |
| JON OZMINT, Commissioner, ) | |
| South Carolina Department of Corrections,[1] ) | |
| ) | |
| Respondent ) | |

**APPOINTED COUNSEL'S RESPONSE TO RESPONDENT'S STATUS
REPORT (ECF 225) AND PETITIONER'S PRO SE MOTION (ECF 234)**

Appointed counsel for James D. Robertson, the petitioner in the above-captioned matter, respectfully submit their response to Respondent's status report (ECF 225) and Robertson's pro se motion seeking to relieve counsel, with the ultimate stated goal being to waive these proceedings, which will result in his execution by the State of South Carolina. Counsel request 120 days for an evaluation of Robertson's competency to waive these proceedings and the conditions underlying his current wish to expedite his death sentence and to allow counsel time to familiarize themselves with the state court record in order to be able to adequately advise Robertson of the nature of the claims and proceedings that he is waiving.[2]

On March 12, 2025, Respondent filed a status report indicating that Robertson's appeal in his state post-conviction relief action had concluded and requesting that the stay of his federal

---

[1] Both parties agree that the caption should be amended to replace Jon Ozmint with Bryan P. Stirling, Director of the South Carolina Department of Corrections, and Lydell Chestnut, Deputy Warden of Broad River Correctional Secure Facility. Petitioner's Motion to Amend the Caption is pending before this Court (ECF 239).

[2] Undersigned counsel consulted with Respondent's counsel, Melody Brown, who does not consent to this request and intends to file a reply detailing Respondent's position.

1

habeas proceedings be lifted. (ECF 225). This Court ordered Robertson to file a response by April 11, 2025 (ECF 226). On April 2, 2025, this Court entered an order appointing the Capital Habeas Unit for the Fourth Circuit (hereinafter "CHU") to represent Robertson alongside Attorney Emily Paavola. (ECF 228). Attorney Teresa L. Norris entered an appearance on April 4, 2025. (ECF 233).

On April 7, 2025, this Court received a letter from Robertson asking to relieve his attorneys so that he can withdraw his federal habeas petition, which will result in his execution. (ECF 234). This Court construed the letter as a motion and ordered counsel to respond by April 23, 2025. (ECF 236). On April 11, 2025, undersigned counsel filed a response to Respondent's status report, agreeing that the state court proceedings have now concluded and the stay entered to allow Robertson to exhaust his claims in state court (ECF 44, 59, 64) should be lifted,[3] and, in light of Robertson's correspondence, counsel requested more time to suggest next steps for this proceeding. (ECF 238). On April 11, 2025, this Court extended the time to respond to Respondent's status report to April 23, 2025. (ECF 240).

For the reasons discussed below, counsel respectfully request 120 days to evaluate Robertson's competence to waive his right to counsel and to withdraw his petition, as well as whether his decisions to waive are knowing, intelligent, and voluntary. As Robertson has just completed a state court proceeding in which Ms. Paavola has not represented him since 2019 and the CHU counsel have never represented him at all, counsel seek this time to familiarize (or refamiliarize) themselves with the voluminous state and federal record and Robertson's pending claims, assess any changes in the governing case law, and to adequately advise him as to the status and viability of his grounds for relief.

---

[3] The Stay of Execution for the duration of Robertson's "pursuit of federal habeas corpus relief" (ECF 10) remains in effect, however.

2

I.  **Standards Governing Request to Proceed Pro Se and to Withdraw Habeas Petition**

   a. **Request to Proceed Pro Se**

As a threshold matter, there is no federal constitutional right to self-representation in federal habeas proceedings. While the Supreme Court has recognized a limited right to proceed pro se at state criminal trials, *Faretta v. California*, 422 U.S. 806 (1975), that right does not extend to appeals as of right or post-conviction proceedings. *Martinez v. Court of Appeal of California, Fourth Appellate Dist.*, 528 U.S. 152, 163 (2000). Since the Sixth Amendment is likewise inapplicable in federal habeas proceedings, *Coleman v. Thompson*, 501 U.S. 722, 752 (1991), there is no basis for finding a right to self-representation in habeas proceedings. Drawing on this authority, multiple courts have found no federal constitutional right to self-representation in federal habeas proceedings and concluded that a district court has discretion to deny a petitioner's request to proceed pro se.[4]

A district court's discretion to grant a petitioner's request to proceed pro se is subject to two important caveats. First, that discretion is limited to circumstances where the waiver of the statutory right to counsel is knowing and voluntary. Even at trial where the Sixth Amendment right to self-representation exists, "the right of self-representation is not absolute," *Indiana v. Edwards*, 554 U.S. 164, 171 (2008). In order to represent himself, the defendant must "voluntarily and

---

[4] *See, e.g.*, *Wiseman v. Beard*, 629 F. Supp. 2d 488, 490 (E.D. Pa. 2009) (exercising discretion to deny a § 2254 petitioner's request to proceed pro se). *See also Bush-Rowland v. United States*, No. CV 21-19652 (GC), 2025 WL 417108, at *1 (D.N.J. Feb. 6, 2025) (finding no constitutional right to self-representation in federal habeas and exercising discretion to require petitioner to obtain legal representation); *Fletcher v. Beard*, No. CV 10-3188, 2016 WL 2866431, at *3 (E.D. Pa. May 16, 2016) ("[I]t is entirely within the Court's discretion whether Petitioner should be allowed to remove counsel and proceed pro se in this habeas corpus matter."); *Stankewitz v. Ayers*, No. CIV. F-91-616-AWI-P, 2007 WL 4522610, at *1 (E.D. Cal. Dec. 18, 2007) (finding that "the right to self-representation does not extend to post-conviction proceedings" and exercising discretion to deny § 2254 petitioner's request to proceed pro se).

3

intelligently" waive the right to counsel, and he must be "aware of the dangers and disadvantages of self-representation." *Faretta*, 422 U.S. at 835 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). It follows that a federal district court has discretion to grant a habeas petitioner's motion to dismiss counsel only when the waiver of counsel is made "voluntarily and intelligently" and only after petitioner is advised of the "dangers and disadvantages of self-representation." *Id*. Second, a federal district court must also deny a request for self-representation if a petitioner is not competent to represent himself. *Edwards*, 554 U.S. at 175-78. *See also Wiseman v. Beard*, 629 F. Supp. 2d 488, 490 (E.D. Pa. 2009) (Before allowing a federal habeas petitioner to dismiss counsel, a court must "determine if [the petitioner] is competent to represent himself.").

b. **Withdrawal of Federal Habeas Petition**

Robertson's stated goal in relieving counsel is to "withdraw the federal habeas petition" he previously initiated, ECF 234, which will result in his execution.[5] Adjudicating that request also requires a determination of Robertson's mental competence. In order to rule on a request to withdraw Robertson's petition, this Court must determine "whether he has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises." *Rees v. Peyton*, 384 U.S. 312, 314 (1966). Likewise, this Court must assure itself that Robertson is making "a knowing and intelligent waiver" of his rights to post-conviction review, *Gilmore v. Utah*, 429 U.S. 1012, 1013 (1976), and

---

[5] Withdrawal of the federal habeas petition and, accordingly, lifting the stay of execution while federal habeas proceedings remain pending, ECF 10, would result in the issuance of "an execution notice" by the South Carolina Supreme Court, *In re Stays of Execution in Capital Cases*, 471 S.E.2d 140, 142 (S.C. 1996), with the execution by electrocution, lethal injection, or firing squad, S.C. Code § 24-3-350, being carried out "on the Fourth Friday" or 28 days after the warrant issues, S.C. Code § 17-25-370.

4

that the waiver is "voluntary" and not "coerc[ed]" by the "conditions" of Robertson's confinement, *Smith By and Through Missouri Public Defender Com'n v. Armontrout*, 812 F.2d 1050, 1058 (8th Cir. 1987); *see also Comer v. Stewart*, 215 F.3d 910, 918 (9th Cir. 2000) (recognizing that a waiver is involuntary if a petitioner's "conditions of confinement constitute punishment so harsh that he has been forced to abandon a natural desire to live").

## II. Reasons to Doubt Petitioner's Competence to Proceed Pro Se and to Withdraw the Petition

### a. Petitioner's History of Similar Requests and of Changing His Mind

Robertson was sentenced to death on March 26, 1999. During his direct appeal, he moved to relieve his appointed appellate counsel, waive his appeals, and have an execution date set. (July 4, 2000 Letter, C-Track Direct Appeal Case File,[6] [hereinafter "C-Track"], at 515 & Aug. 28, 2000 Letter, ECF 42-7). The South Carolina Supreme Court remanded the matter to the trial court to determine whether Robertson was making a knowing and intelligent waiver of his right to counsel and whether he was competent to dismiss his appeal and be executed. (Oct. 6, 2000 Order, ECF 36-9). Following appointment of new trial counsel for the competence proceedings, Robertson changed his mind and indicated a desire to appeal, although he continued to request that his appellate counsel be relieved, (Mar. 15, 2001 Affidavit, ECF 36-12), and that different "competent appellate counsel" be appointed to represent him, (Oct. 1, 2001 Affidavit, C-Track at 434). The Supreme Court then relieved appellate counsel and appointed a new appellate counsel. (Nov. 15, 2001 Order, ECF 36-14).

New appellate counsel filed an initial brief on April 15, 2002. C-Track at 385-410. Only three days later, Robertson again wrote to the Court seeking to relieve and replace his second

---

[6] Available at https://ctrack.sccourts.org/public/caseView.do?csIID=11889 (last visited Apr. 23, 2025).

appellate counsel, also asking the Court to "nullify and omit" the brief filed by counsel and to reject all documents filed on his behalf unless accompanied by his signature. (Apr. 18, 2002 Letter, ECF 37-1). The Court denied the motion. (May 16, 2002 Order, ECF 37-2. Robertson then moved to proceed pro se. (June 3, 2002 Letter, ECF 37-3). The Court again remanded to the trial court for a determination of Robertson's competence and whether his waiver of the right to counsel was "knowing and intelligent." (June 26, 2002, ECF 37-4). On remand, the trial court did not order a mental health evaluation but instead conducted a 40-minute hearing at which only Robertson testified, [Oct. 10, 2002 Transcript, C-Track at 316-349]. Based on that alone, the trial court held Robertson was competent and making a knowing and intelligent waiver of the right to counsel. (Oct. 28, 2002 Report, ECF 37-5). The Supreme Court granted Robertson's motion to proceed pro se. (Nov. 21, 2002 Order, ECF 42-13).

Representing himself, Robertson failed to file his Initial Brief and Designation of Matter for the appellate record in a timely fashion, and the Court dismissed his appeal. (May 27, 2003 Order, C-Track at 259-260). Upon Robertson's motion, the Court reinstated the appeal. (June 25, 2003 Order, C-Track at 196). Robertson then filed his Initial Brief, (July 28, 2003 Brief, C-Track at 156-184), but failed to file the Record on Appeal as required by the court rules, which again resulted in the appeal being dismissed, (July 20, 2004 Order, C-Track at 92-93). Again, the court reinstated his appeal. (Aug. 23, 2004 Order, C-Track at 85-86). Then, still having not filed the Record on Appeal, Robertson sent the Court a long letter complaining about his treatment by the South Carolina Department of Corrections, adding that he again wanted to dismiss the appeal and set an execution date, (Sep. 20, 2004 Letter, C-Track at 75-77). He reiterated that request in another letter a week later, (Oct. 4, 2004 Letter, C-Track at 69).

Once again, the Court remanded to the trial court for a determination of competence and whether Robertson was making knowing and intelligent waivers of his right to appeal. (Nov. 22, 2004 Order, ECF 37-8.) And, once again, the trial court failed to order a mental health evaluation and convened yet another hearing on February 22, 2005, in which Robertson, who was acting pro se, was the only witness. (Feb. 22, 2005 Transcript, C-Track at 23-50.) And once again, based on that testimony alone, the trial court found him competent and that he was making knowing, intelligent, and voluntary waivers. (Feb. 25, 2005 Report, ECF 37-10). The Supreme Court then found Robertson competent to waive his right to appellate review, dismissed the appeal, and ordered that an execution notice issue. (June 3, 2005 Order, ECF 37-11).

Less than two weeks later, despite having waived his appeal and requesting an execution date, Robertson then moved pro se for a stay of execution and assignment of a judge to preside over state post-conviction proceedings. (June 16, 2005 Letter, C-Track at 16-17). Over the state's objection, the Court granted a stay of execution and assigned a judge to preside over post-conviction proceedings. (Jul. 7, 2005 Order, ECF 37-12). The PCR court appointed counsel and the case has proceeded since that time without Robertson seeking to relieve counsel or withdraw proceedings.

In an echo of these earlier proceedings, Robertson consented on March 28, 2025, to Ms. Paavola moving on his behalf to appoint the Capital Habeas Unit for the Fourth Circuit to represent him as her co-counsel in his federal habeas proceedings. (ECF 228). Just three days later, Robertson wrote to this Court and requested permission to represent himself so that he can withdraw his federal habeas petition. (ECF 234). Given Robertson's history, this Court should permit the assessment of his mental health by experts retained by appointed counsel that the state courts twice eschewed.

### b. Petitioner's Mental Health History and Current Mental Status

Robertson's long and troubled mental health history also raises concerns about his competence to represent himself and to forgo federal habeas review. Robertson began receiving mental health treatment as a teenager for bipolar disorder characterized by periods of mania and depression, as well as attention deficit hyperactivity disorder. Both sides of his family include a history of mood disorders. When he was 23 years old, his mental illness reached the level that he was involuntarily committed to mental health treatment by his mother. (Pryor Testimony, ECF 41-7 at 167). In addition to bipolar disorder, Robertson has neuropsychological dysfunction in the frontal lobes of his brain that leads to unusually concrete thinking and impairs his ability to control his emotions and impulses. (Pincus Testimony, ECF 41-7 at 203-44 & Evans Testimony, ECF 41-8 at 40-95). Robertson also has a history of suicidal thinking that dates back to the 9th grade and has continued throughout his life. (Cascio Testimony, ECF 41-9 at 160).

Ms. Paavola was appointed to represent Robertson in his federal habeas proceedings in 2010. Over the past fifteen years, on numerous occasions, in an unmedicated state, Robertson has become depressed, resulting in suicidal thoughts and expressions of a wish to facilitate his own execution by waiving any remaining appellate proceedings. These periods have varied in length from a matter of weeks to many months. They are typically triggered by situational factors, such as onerous confinement conditions, loneliness, personal loss, poor health management, events in his legal proceedings, and difficulty obtaining proper medication. However, in all prior instances, the common denominator is this – when his mental health issues are not properly medicated, Robertson falls into a deep depression. The inverse is also true – when his depression is well-controlled (and/or the situational problems are remedied), Robertson has repeatedly and consistently reversed his position.

The present circumstances include multiple factors that have previously produced Robertson's temporary states of suicidality. Most significantly, Robertson is not taking mental health medication, and his depression has been untreated for approximately three years. In addition, he suffers from significant back pain and a chronic skin condition, which has never been properly treated by SCDC despite repeated efforts from Robertson's counsel to assist with, and even pay for, treatment. In addition, Robertson recently experienced a loss of connection with his brother, who was hospitalized last fall for persistent medical problems.

Finally, the present conditions on death row are producing significant distress. All death row inmates have been in a perpetual cycle of lockdown since at least August of 2024, when South Carolina announced plans to begin a period of six continuance executions to be carried out at intervals of approximately thirty-five days. Over the past eight months, SCDC has executed five people[7] – men whom Robertson has known nearly half his life – including Robertson's closest friend, Marion Bowman, who was executed on January 31, 2025. Although there has never been a security concern that would justify such procedures, SCDC has taken the position that all death row inmates (including those who, like Robertson, are not expected to receive an execution warrant imminently) must be locked in their cells and kept under burdensome confinement conditions for approximately eleven days surrounding each execution date – up to the Monday following each Friday execution.[8] It is well-established that the burdens of "[p]rolonged solitary confinement exact[] a heavy psychological toll" on prisoners. *Incumaa v. Stirling*, 791 F.3d 517, 534 (4th Cir. 2015). Over the past eight months, only a few short days after the lockdown procedures were lifted,

---

[7] The South Carolina Supreme Court stayed the execution of Steven Bixby, who was expected to be the last of the six, seriatim executions. *State v. Bixby*, Appellate Case No. 2007-054161 Order (Mar. 13, 2025).

[8] Even apart from execution procedures, death row inmates are routinely locked down on weekends due to SCDC staffing shortages.

the South Carolina Supreme Court issued a new execution order, triggering the anticipation of a new lockdown cycle and another execution.

On March 12, 2025, the South Carolina Supreme Court issued an order declining to review the denial of Robertson's state postconviction relief application, *Robertson v. State*, Appellate Case No. 2023-000505 (Order, Mar. 12, 2025), which had been pending, at various procedural stages, since 2010. The state court issued the remittitur on March 28, 2025, bringing Robertson's state court proceedings to a close. That same day, Robertson consented to have Ms. Paavola move on his behalf to appoint the Capital Habeas Unit for the Fourth Circuit to represent him alongside Ms. Paavola in his federal habeas proceedings. (ECF 228). Three days later, Robertson wrote to this Court and requested permission to represent himself so that he can withdraw his federal habeas petition. (ECF 234).

### III. Proposed Scheduling Order

Undersigned counsel respectfully request 120 days in which to undertake two tasks that will enable us to determine whether Robertson's request to proceed pro se and withdraw his federal habeas petition meets the legal standards discussed above.

First, counsel must evaluate whether Robertson is competent to represent himself and to withdraw his habeas petition, as well as whether Robertson's intended waivers are knowing, intelligent, and voluntary. Counsel have retained Donna Maddox, M.D., to evaluate Robertson's competence and mental status, as well as the physical and psychiatric conditions that are currently going untreated by SCDC. Counsel also intend to retain Susan Knight, Ph.D., who evaluated Robertson's mental state during state post-conviction proceedings, to also assess Robertson's competence and mental status and she has agreed to the retainer. These experts will assess whether Robertson has the mental capacity to make a voluntary, knowing, and intelligent choice to waive

10

his right to counsel, whether he is capable of carrying out the tasks required to litigate his petition, and whether he "has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises." *Rees*, 384 U.S. at 314.

Second, as discussed above, a petitioner can only make a knowing and intelligent choice to dismiss counsel and forgo federal habeas proceedings after being informed of the risks and disadvantages of these decisions. Counsel must review voluminous case materials before being able to properly advise Robertson. Although Ms. Paavola has represented Robertson on his federal habeas petition since 2010 (ECF 11), she did not represent him in the state post-conviction proceedings that recently concluded on March 28, 2025. The Capital Habeas Unit for the Fourth Circuit was appointed by this Court on April 3, 2025 (ECF 231), and Ms. Norris filed her appearance the following day, (ECF 232). Robertson's petition includes complex claims that require a thorough analysis of the governing case law and the underlying record, which is voluminous.

If, after 120 days, Robertson still wishes to dismiss counsel and withdraw his habeas petition, counsel will be prepared to take a position on whether his requests meet the legal standards discussed above.

This, the 23rd day of April, 2025.

                                                  s/ Emily C. Paavola
EMILY C. PAAVOLA #11488
900 Elmwood Ave., Suite 200
Columbia, SC 29201
(803) 834-0835
Emily@justice360sc.org

JOHN G. BAKER
Federal Public Defender for the
Western District of North Carolina

GERALD W. KING, JR.
Chief, Capital Habeas Unit
For the Fourth Circuit

s/ Teresa L. Norris
TERESA L. NORRIS #6447
Capital Habeas Unit
For the Fourth Circuit
129 West Trade Street, Suite 300
Charlotte, NC 28202
(704) 688-6946
Teresa_Norris@fd.org